UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | No. 24-103 |
| DONTE WILLIAMS | SECTION: "J"(5) |

## ORDER & REASONS

Before the Court are a *Motion to Dismiss Count Two of the Indictment* **(Rec. Doc. 31)** and a *Motion to Dismiss Count Three of the Indictment* **(Rec. Doc. 32)** filed by Defendant Donte Williams. Plaintiff, United States, filed a response in opposition thereto (Rec. Doc. 34). Having considered the motions, the legal memoranda, the record, and the applicable law, the Court finds that the motions should be **DENIED.**

## FACTS AND PROCEDURAL BACKGROUND

On May 3, 2024, Defendant was indicted on three counts. Count One charges Defendant with possession with the intent to distribute controlled substances, specifically, marijuana, methamphetamine, fentanyl, and tapentadol, in violation of Title 21, United States Code, §§ 841(a)(1), 841(b)(1)(C) and (b)(1)(D). (Rec. Doc. 1, at 1–2). Count Two charges Defendant with possession of a firearm in furtherance of a drug traffic crime in violation of Title 18, United States Code § 924(c)(1)(A)(i). *Id.* at 2. Count Three charges Defendant with being a felon in possession of a firearm/ammunition in violation of Title 18, United States Code, § 922(g)(1) and 924(a)(8). *Id.* at 2–3.

Defendant filed these instant motions seeking dismissal of (1) Count Two on grounds that there has been no violation of 18 U.S.C. § 924(c)(1)(A)(i), (Rec. Doc. 31); and (2) Count Three on grounds that 18 U.S.C. § 922(g)(1) is unconstitutional on its face and as applied to Mr. Williams, (Rec. Doc. 32, at 1). The Government opposes both motions. (Rec. Doc. 34).

## LEGAL STANDARD

A party may challenge an indictment for failing to state offense pursuant to Federal Rules of Criminal Procedure 12(b), which permits a party to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. Proc. 12(b)(1). "The propriety of granting a motion to dismiss an indictment. . . is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact." *U.S. v. Flores*, 404 F.3d 320, 324 (5th Cir. 2005) (citations omitted) (internal quotations omitted). "If a question of law is involved, then consideration of the motion is generally proper." *Id.* (citations omitted) (internal quotations omitted). "In reviewing a challenge to an indictment alleging that it fails to state an offense, the court is required to take the allegations of the indictment at true to determine whether an offense has been stated." *U.S. v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011) (citations omitted) (internal quotations omitted). The court may not dismiss an indictment based on the sufficiency of evidence supporting the allegations in the indictment, *Costello v. United States*, 350 U.S. 359, 364 (1956); however, the court may consider the legal sufficiency of uncontested facts and the correct statutory interpretation.

2

*Flores*, 404 F.3d at 326. "If the court finds that after resolving the questions of law, the defendant could not be found criminally liable; the court should grant the motion to dismiss." *United States v. Kohll's Pharmacy and Homecare Inc.*, No. 17-39, 2017 WL 2951580, at *2 (W.D. La. Jul. 6, 2017).

In this matter, Defendant failed to mention 12(b) in either motion or memorandum in support. (Rec. Docs. 31, 32). However, Mr. Williams first asserts his "conduct of possessing a firearm was certainly not in furtherance of any trafficking offense as he did not possess the weapons at the time he is alleged to have sold a controlled dangerous substance." (Rec. Doc. 31, at 2). Secondly, Mr. Williams asserts that 18 U.S.C. § 922(g)(1) is unconstitutional on its face as applied to him. (Rec. Doc. 32, at 1). Thus, Mr. Williams appears to argue that Count 2 and Count 3 failed to state an offense under Fed. R. Cim. P. 12(b)(3)(B)(v) and the Court will analyze the motions under that basis.

## DISCUSSION

I.   *Motion to Dismiss Count Two of the Indictment*

First, Mr. Williams seeks dismissal of Count Two of the Indictment on grounds that the Government has not satisfied the essential element of finding that his possession of firearm was "in furtherance" of drug trafficking. (Rec. Doc. 31, at 1). Specifically, Mr. Williams argues that his possession of a firearm was not "in furtherance" of a drug-trafficking crime because the weapons discovered were not on his person at the time of his arrest, but located in his home that was located "nearly a block away from the site of his arrest." *Id.* at 2. In other words, Mr. Williams argues

3

his conduct of possessing a firearm was not "in furtherance" of any trafficking offense as he did not possess the weapons at the time he was alleged to have sold a controlled dangerous substance. *Id.*

The Government first responds that a motion to dismiss is not the proper remedy to argue that an Indictment is not supported by sufficient evidence. (Rec. Doc. 34). Citing the Fifth Circuit in *United States v. Ceballos-Torres*, 218 F.3d 409 (5th Cir. 2000), the Government next argues that the *Ceballos-Torres* factors support a finding to support the allegations set forth in Court Two of the Indictment. (Rec. Doc. 34, at 4).

In this motion, Mr. Williams essentially asks the Court to engage in an analysis of the facts and law equivalent to a civil motion for summary judgment. First, Mr. Williams states the elements to convict a person under 18 U.S.C. § 924(c)(1)(A)(i), "that the Government prove: (1) a drug trafficking crime was committed; (2) the defendant was in possession of a firearm; and (3) possession of the firearm furthered the drug trafficking crime." (Rec. Doc. 31-1, at 1–2). Next, Mr. Williams recites the "in furtherance" factors considered by the Fifth Circuit in *Ceballos-Torres*, which are "(1) proximity of the firearm to the contraband or its related profits; (2) whether the firearm was easily accessible by the defendant at the time of the offense; (3) whether the defendant legally possessed the weapon (e.g., whether the defendant was a felon in possession of a firearm, or in possession of a stolen weapon); and (4) 'the type of drug activity that is being conducted.'" (Rec. Doc. 31-1, at 2) (citations omitted). Mr. Williams also cites *United States v. McGinnis*, 384

Fed. Appx. 792, 796 (10th Cir. 2010) for the Tenth Circuit's consideration of the type of firearm and whether the firearm was loaded as factors, and *United States v. Ramirez-Flechel*, 23 F.4th 69, 73 (1st Cir. 2022) for the First Circuit's analysis of the "in furtherance" factors, which splits the "factors into the subjective—the defendant's intent, and the objective—accessibility, proximity, status of the firearm, and 'surrounding circumstances.'" (Rec. Doc. 31-1, at 3–4) (citations omitted).

Mr. Williams next applies the facts to these factors, arguing "[w]hile there is the presence of firearms in his home, there is no allegation contained in the Indictment that Mr. Williams was in possession of a firearm at the time of his arrest." *Id*. at 4. At the time of seizure, the firearms were loaded and located in various places in his home–some in plain view and others hidden. The firearms were found because of a subsequent search of his home. The firearms seized included two rifles located within the return A/C space, two pistols taken from the living room couch and one pistol found on an eave just below the living room ceiling. None of the seized weapons were located on Mr. Williams' person or within his reach at the time of his arrest for allegedly trafficking narcotics. At the time of his arrest, Mr. Williams argues he was "at least one block away from his home." (Rec. Doc. 31-1, at 5). Whereas the Government views the evidence that Mr. Williams was "near his residence." (Rec. Doc. 24, at 4). The evidence submitted to the Court depicts that the place of arrest was across the street from Mr. Williams' residence; however, his residence is behind another home. (Gov't Exhibit 3, at 2:48).

5

Essentially, the Defendant argues that the facts of this case do not meet the statutory requirements of 924(c)(1)(A). The Court disagrees and finds there is evidence to support a conclusion that Mr. Williams' possession was in furtherance of the drug trafficking crime. Rule 12 of Federal Criminal procedure permits the Court to dismiss an indictment only if it fails to state an offense. The Court finds that there is sufficient evidence supporting the Government's allegations in the Indictment. First, Mr. Williams was engaged in a hand-to-hand drug transaction near his residence. Second, firearms, hidden and in plain view, were found in his residence near drugs and drug trafficking paraphernalia. Third, one firearm was stolen. Fourth, Mr. Williams, a convicted felon, is prohibited from possession of firearms. Further, the Court finds that the conclusion of whether Mr. Williams' possession of firearm was "in furtherance" of a drug trafficking crime should be left to the trier of fact. Mr. Williams' proximity of to the firearms at time of his arrest may or may not be helpful to the jury at trial. Therefore, the Court finds that there are no grounds for dismissal of Count Two.

## II. *Motion to Dismiss Count Three of the Indictment*

Mr. Williams argues that § 922(g)(1) is "unconstitutional on its face as applied to Mr. Williams," asserting that § 922(g)(1) violates the Second Amendment to the United States Constitution because the statute limits the right to possess a firearm for self-defense, and because "no relevant historical evidence of categorically disarming felons has been shown." (Rec. Doc. 32, 1–2). Mr. Williams claims that his possession of a firearm was for the purpose of self-defense and relies on both the

6

Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen* and the Fifth Circuit's decision in *United States v. Rahimi* to support his argument that § 922(g)(1) is facially unconstitutional, but this reliance is misplaced for the reasons explained more fully below. *Id.*

The Supreme Court's decision in *Bruen* abrogated the two-step framework that the Fifth Circuit previously used to evaluate firearms regulations. *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 17 (2022). *Bruen* instructed courts that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.* Then, under the second step of the *Bruen* analysis, the Government must demonstrate that the challenged statute or regulation is "consistent with the Nation's historical tradition of firearm regulation." *Id.* In this case, the Government must demonstrate that the Nation has a longstanding tradition of disarming someone with a criminal history analogous to Mr. Williams's. *See United States v. Diaz*, 116 F.4th 458, 467 (5th Cir. 2024).

The Court finds that possession of a firearm constitutes conduct that is protected by the Second Amendment's plain language, so the Court will move to the second step of the *Bruen* analysis. Mr. Williams argues that under the *Bruen* test, § 922(g)(1) is unconstitutional because he possessed a firearm for self-defense, and because in *United States v. Rahimi*, the Fifth Circuit rejected the suggestion that the Second Amendment applies only to "law-abiding" citizens. (Rec. Doc. 32-1, at 2). Mr. Williams's argument takes the Fifth Circuit's conclusion out of context, however.

In *Rahimi*, the defendant was charged under § 922(g)(8), which prohibits an individual subject to a domestic violence restraining order from possessing a firearm. 18 U.S.C. § 922(g)(8). In that case, the court was careful to point out that the defendant "was not a convicted felon or otherwise subject to another 'longstanding prohibition[ ] on the possession of firearms' that would have excluded him" from the Second Amendment's protections. *United States v. Rahimi*, 61 F.4th 443, 452 (5th Cir. 2023), *rev'd*, 602 U.S. 680 (2024) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626–27 (2008)). Contrary to Mr. Williams's argument, the *Rahimi* panel acknowledged that a statute preventing a convicted felon from possessing a firearm represents a "longstanding prohibition" that comports with the Second Amendment, and the fact that the defendant in that case was *not* a convicted felon influenced the court's decision.

Furthermore, although the Fifth Circuit in *Rahimi* held that § 922(g)(8), which applies specifically to a citizen who is subject to a restraining order and *not* to a convicted felon, was unconstitutional, the United States Supreme Court overruled this decision, finding § 922(g)(8) constitutional and stating that "our tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others." *Rahimi*, 602 U.S. at 700. Felons, as the Supreme Court stated in *District of Columbia v. Heller*, are not part of the law-abiding citizenry protected by the Second Amendment. *Heller*, 554 U.S. 570, 626 (2008) ("nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons"). Therefore, the Supreme Court's

reasoning in *Rahimi* that those civilly adjudicated to be a danger to society may be denied the right to own guns applies with even greater strength to defendants charged under § 922(g)(1), who have already been criminally convicted. Moreover, the Fifth Circuit recently affirmed the facial constitutionality of § 922(g)(1) in *United States v. Diaz*, yet another case which forecloses Mr. Williams's facial challenge to the statute. *Diaz*, 116 F.4th at 471–72 (5th Cir. 2024).

Mr. Williams's as-applied challenge to § 922(g)(1) also fails. The Government acknowledges that founding-era laws prohibiting the distribution of drugs—specifically methamphetamine, fentanyl, and tapentadol—did not exist because the drugs themselves did not exist at that time. However, the *Bruen* Court explained that the government need only "identify a well-established and representative historical analogue, not a historical twin." *Bruen*, 597 U.S. at 30.

When the predicate offense is possession with the intent to distribute controlled substances, as in the instant case, the Government identifies historical analogues to § 922(g)(1) both in the "going armed" laws discussed in *Rahimi* and *Diaz* and in the fact that "from the founding period onward, legislatures aimed to curb marketplaces that trafficked in illicit goods." (Rec. Doc. 34, at 10). For example, the Virginia Legislature made the trading of stolen horses a capital crime in 1748, (Rec. Doc. 34, at 10 (citing 6 William Waller Hening, *The Statutes at Large; Being a Collection of All the Laws of Virginia from the First Session of the Legislature, in the Year 1619* 130 (1819)), and a 1792 federal statute made mail theft punishable by death, *id.* (citing *An Act to Establish the Post-Office and Post Roads Within the United*

*States*, § 17 1 Stat. 232, 237 (1792)). Therefore, during the founding era, individuals convicted of trafficking in illicit goods were often subject to the death penalty, and "[e]arly legislatures . . . authorized punishments that subsumed disarmament—death or forfeiture of a perpetrator's entire estate—for non-violent offenses involving deceit and wrongful taking of property." *United States v. Jackson*, 110 F.4th 1120, 1127 (8th Cir. 2024) (citing *An Act for the Punishment of Certain Crimes Against the United States*, Pub. L. No. 1-9, § 14, 1 Stat. 112, 115 (1790)).

From the founding era to the present, legislatures have understood their authority to include prohibiting certain classes of people from possessing firearms. In *Diaz*, the Fifth Circuit specifically addressed the "going armed" statutes and concluded that the "size of these laws' burden on the right to bear arms is comparable to that of § 922(g)(1). They both provide for permanent arms forfeiture as a penalty. . . Imposing permanent disarmament as a punishment is also within our Nation's history and tradition." *Diaz*, 116 F.4th at 471 (citing Acts and Resolves, Public and Private, of the Province of the Massachusetts Bay 53). The Court finds that the Government has met its burden of establishing historical analogues to § 922(g)(1).

Therefore, based on an historical understanding of the Second Amendment and its permissible limitations, and based on more recent case law pertaining specifically to § 922(g)(1), this Court concludes that § 922(g)(1) is constitutional as applied to Williams and that it "fits neatly" within this country's tradition of regulating firearm possession. *See Rahimi*, 602 U.S. at 698.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that the motions are **DENIED**.

New Orleans, Louisiana, this 29th day of February, 2025.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE