UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                      No. 24-103

DONTE WILLIAMS                              SECTION: "J"

**ORDER & REASONS**

Before the Court is a *Motion to Suppress Evidence* **(Rec. Doc. 58)** filed by Defendant Donte Williams. The Government filed a response in opposition thereto. (Rec. Doc. 60). The Court also held a hearing on the motion. (Rec. Doc. 68). Having considered the motion, the legal memoranda, the record, and the applicable law, the Court finds that the motion should be **DENIED.**

**FACTS AND PROCEDURAL BACKGROUND**

On the evening of February 22, 2024 a detective was conducting surveillance at the intersection of North Claiborne Avenue and Desire Street in New Orleans, Louisiana. The detective was surveilling this area through the city's Real Time Crime Center (RTCC) camera posted on the corner. While conducting surveillance, the detective advised nearby officers by radio that he observed an individual, later identified as Defendant Donte Williams, making several hand-to-hand transactions after short contacts consistent with narcotics distribution. The RTCC camera footage provided to the Court shows two of these transactions.

1

In the first exchange, Williams approached and briefly spoke to an individual in a camouflage jacket. Williams then looked at the RTCC camera before retreating behind a pick-up truck to avoid the camera's view. Williams then beckoned the individual to follow. The pair retreated behind the truck, but the camera caught their exchange through the truck's front side windows. Williams took out a plastic bag and removed something from the bag, balled it in his hand, and then handed it to the individual.

The two split after about 10 seconds, and Williams then deposited something consistent with cash in his front pants pocket. A few moments later, Williams used his hand to adjust a "rigid 'L' shaped object above his waistline." Gov. Exh. 9.

In the second exchange, Williams approached the passenger side of a parked older model pick-up truck with dark tinted windows. Williams has a short contact with the occupants of that vehicle before walking away and placing something in his back pants pocket.

Williams then walked from the parking lot to inside the back door of his residence directly across the street. Around 30 minutes later, Williams exited that back door and walked back to the parking lot, but this time he went inside the adjoining convenience store.

Officer Hairston, a member of the New Orleans Police Department Special Operations Division with seven years of experience as an officer, was one of several

2

nearby officers receiving this radioed information from the detective. Officer Hairston reviewed the footage and determined that, based on his experience with drug arrests, Williams had probably engaged in drug transactions and carried a firearm to protect himself during these transactions. Seargeant Terrence Hilliard, Hairston's supervisor and an officer with approximately 17 years of experience, was also receiving the radioed information, and he decided that officers should detain Williams.

Officers arrived and entered the store. While entering they observed two bags of marijuana dropped at Williams' feet. Officers also found marijuana clutched in Williams' hand. Officer Hairston then cuffed Williams and advised him of his rights, and Williams responded that he understood. Officers searched Williams and found additional bags of marijuana and tapentadol pills. Officer Hairston then began preparing an affidavit and search warrant for Williams' residence.

After police cuffed Williams, he mentioned that his eleven-year-old disabled daughter was left alone in his residence across the street. Williams asked the officers if his sister Rashon could get his daughter. Rashon arrived at the scene, and William's pointed officers to his apartment key. Officers, headed by Seargeant Hilliard, then escorted Rashon to Williams' residence to retrieve his daughter.

Officers followed Rashon to the back door of the residence. While unlocking the door with Williams' keys, but before opening it, Seargeant Hilliard twice asked Rashon if Williams' daughter could be called to the door to avoid officers entering the

3

residence. But Rashon responded that Williams' daughter could not come to the door unassisted because of her disability.

Officers then opened the door and followed Rashon as she retrieved Williams' daughter. Williams' daughter was in a room directly ahead from the door, and officers did not go beyond this area when retrieving her. Still, while in the residence officers detected the pungent odor of marijuana. They also observed marijuana in Williams' kitchen, which was visible from the entryway of Williams' residence.

Officers relayed their observations to Hairston, who added this information to the affidavit supporting the search warrant for Williams' residence. The warrant was issued, and officers searched the residence. Inside, officers discovered firearms, marijuana, tapendatol, and other pills that tested positive for fentanyl.

Williams now seeks to suppress all evidence recovered from (1) his detention and arrest (2) the entry of his house to retrieve his daughter, and (3) the warrant-based search of his residence. (Rec. Doc. 58, at 1).

4

## <u>LEGAL STANDARD AND DISCUSSION</u>

(1) Evidence Obtained from Williams' Arrest

Williams first argues that police lacked probable cause for his arrest. (Rec. Doc. 58, at 11). The Government disagrees (Rec. Doc. 60).

The Fourth Amendment to the United States Constitution provides that citizens have the right to be free from arrests made without probable cause. *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994). "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Haggerty v. Texas Southern University*, 391 F.3d 653, 655–56 (5th Cir. 2004) (quoting *Glenn*, 242 F.3d at 313) (internal quotation marks omitted). This Court has held that probable cause means a "fair probability" that a crime has been committed. *See Fillios v. Harahan Police Department*, Civ. A. No. 19-45, 2019 WL 2009241 (E.D. La. May 7, 2019) (citing *United States v. Garcia*, 179 F.3d 265, 269 (5th Cir. 1999)) Although "the requisite 'fair probability' is something more than a bare suspicion, [it] need not reach the fifty percent mark." *Garcia*, 179 F.3d at 269.

The Court finds that officers had probable cause to arrest Williams. The Fifth Circuit has held that an officer's observation of hand-to-hand transactions that the officer knows to be consistent with drug operations can provide probable cause for arrest. *United States v. Orozco*, 982 F.2d 152, 154 (5th Cir. 1993) (finding probable

cause to arrest where officer observed interactions that he recognized as drug transactions). Here Officer Hairston observed through video surveillance Williams engage in multiple hand-to-hand transactions after short contacts. Officer Hairston knew from his experience with narcotics arrests that Williams' actions were consistent with drug distribution. One of these transactions is fully captured by the RTCC camera. Officer Hairston also observed Williams possess what he believed to be a gun based on his experience with firearms arrests. As a convicted felon, Williams is prohibited from possessing firearms. Further, drug dealers typically carry firearms to protect themselves during their inherently risky transactions. So, it is reasonable to believe that Williams was using this gun to protect himself during a drug operation. If that was not enough, officers observed Williams possess and attempt to discard bags of marijuana when they entered the store to detain him. Based on the totality of the circumstances, the Court finds that officers reasonably believed that Williams had committed a crime at the time of his arrest. Accordingly, his arrest and search was lawful, and the Court will not suppress any items seized therefrom.

(2) Warrantless Entry of Williams' Residence

Williams next argues that the officers unlawfully entered and searched his residence to retrieve his daughter. (Rec. Doc. 58, at 12).

The Government argues that they had Williams' consent to enter the residence and that they did not search the residence at that time. (Rec. Doc. 60, at 4). The Government also argues that, even without Williams' consent, exigent circumstances justified their entry. (Rec. Doc. 60, at 5).

6

"The Fourth Amendment generally prohibits the warrantless entry of a person's home." *Illinois v. Rodriquez*, 497 U.S. 177, 181 (1990).  But that prohibition does not apply when the officers obtain voluntary consent from the individual whose property is entered. *Id.* (citing *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973)). The burden is on the Government to demonstrate voluntary consent. *United States v. Freeman*, 482 F.3d 829, 831 (5th Cir. 2007). In determining voluntary consent, courts consider the totality of the circumstances. *Id.* at 831–32.

The Court finds that officers lawfully entered Williams' residence. First, Williams voluntarily consented to this entry. From the moment of his arrest, Williams expressed to officers concern for the safety of his unattended daughter. While he did not explicitly ask officers to enter the residence, he implicitly consented by making officers aware of his unattended child and by telling officers which key would open the door to his apartment. Williams voluntarily provided this information without any coercion from the officers. While Wiliams may have preferred that Rashon retrieve his daughter alone, it is plain why officers would not allow unescorted entry into a residence that is the subject of a pending investigation. Accordingly, the officers' warrantless entry into Williams' residence was lawful.

Even without Williams' consent, exigent circumstances justified the entry. "Because it is essentially a factual determination, there is no set formula for determining when exigent circumstances may justify a warrantless entry." *United States v. Blount*, 123 F.3d 831, 837 (5th Cir. 1997), *cert denied*, 522 U.S. 1138 (1998). Still, the Fifth Circuit has held that exigent circumstances exist when there are

7

"immediate safety risks" to others. *United States v. Turner*, 472 F.3d 233, 237 (5th Cir. 2006). Further, the Ninth Circuit has held that "the possibility of a nine-year-old child in a house in the middle of the night without the supervision of any responsible adult is a situation requiring immediate police assistance." *United States v. Bradley*, 321 F.3d 1212, 1215 (9th Cir. 2003) (holding that an officers' warrantless entry into a house to retrieve an unattended child was legal under the emergency doctrine).

Here Williams eleven-year-old disabled daughter was left alone in his apartment following his arrest. As explained by Williams' sister and mother, she is incapable of taking care of herself, and she requires 24-hour care. Consequently, the Court finds that police needed to enter Williams' home to retrieve his daughter for her own safety. The Court also finds that the officers' entry was motivated by a concern for the child's welfare, not to prepare a search warrant. The bodycam footage shows that officer Hairston was preparing a search warrant for Williams' home well before the officers' warrantless entry. Further, Officer Hilliard attempted to get Williams' daughter to come to the door prior to entering the home, and he only opened the door and followed Rashon into the home after she explained that Williams' daughter was incapable of coming to the door unassisted. When officers entered the home, they did not go beyond the area necessary to retrieve Williams' daughter. Accordingly, the exigent circumstances doctrine also justified their entry.

Without citing any authority, Williams argues that the exigent circumstances doctrine cannot apply here because officers created the emergency by arresting Williams. The Court disagrees.  For the exigent circumstances doctrine to be

8

inapplicable, police must create the exigency "by engaging or threatening to engage in conduct that violates the Fourth Amendment." *Kentucky v. King*, 563 U.S. 452, 462 (2011). Here, the officers neither engaged nor threatened to engage in conduct that violates the Fourth Amendment. Accordingly, the Court finds that the exigent circumstances doctrine applies, and officers lawfully entered the residence.

At the suppression hearing Williams argued that officers conducted a search of his residence when they looked into the kitchen from the entryway. But "[v]iewing an article that is already in plain view does not involve an invasion of privacy and, consequently, does not constitute a search implicating the Fourth Amendment." *United States v. Hinojosa*, 606 F.3d 875, 884 (6th Cir. 2010) (quoting *United States v. Jackson*, 131 F.3d 1105, 1108 (4th Cir. 1997); *see also*, *Horton v. California*, 496 U.S. 128, 133 (1990) ("If an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy.") Therefore, the Court finds that officers did not conduct a Fourth Amendment search when they observed marijuana in plain view in Williams' kitchen.

(3) Warrant-based Search

Having found that police lawfully entered the residence, the Court will not excise the officers' pre-warrant observations from the affidavit. Because officers lawfully entered the residence, any evidence that they observed in plain view is admissible. *See Texas v. Brown*, 460 U.S. 730, n. 4. (1983) ("The information obtained as a result of observation of an object in plain sight may be the basis for probable cause or reasonable suspicion of illegal activity."); *Hinojosa*, 606 F.3d at 884–85

9

(holding that officers' plain-view observations while lawfully inside the home "were properly included in the affidavit"); *United States v. Barr*, 349 Fed. Appx. 704, 706 (3rd Cir. 2009) (agreeing with the district court that "the search warrant was properly based upon the police officers' lawful plain view observations"). Here, officers were lawfully in the residence when they smelled marijuana and observed marijuana in plain view in Williams' kitchen. Officers then placed this information in the affidavit to support the issuance of the warrant. Having considered these observations and additional information in the affidavit, the Court finds that the warrant possesses ample probable cause for the officers' search of the residence. Any evidence derived from the warrant's execution is therefore admissible.

Even if the entry was unlawful, the evidence is still admissible under *Murray v. United States*, 487 U.S. 533 (1988). Under *Murray*, a warrant is still valid, and the evidence is still admissible if (1) the decision to seek the warrant was not prompted by the illegal search and (2) the tainted information presented to the magistrate did not affect their decision to issue the warrant. *Id.* at 542. As the Fifth Circuit explained, this second prong is met when, removing the tainted information from the affidavit, there is still probable cause to search the residence. *U.S. v. Restrepo*, 966 F.2d 964, 970 (5th Cir. 1992) (explaining that post-*Murray* "the district court should consider whether the warrant affidavit, once purged of tainted facts and conclusions, contains sufficient evidence to constitute probable cause for issuance of the warrant").

Here, both *Murray* prongs are met. First, as Officer Hilliard's bodycam footage shows, Officer Hairston was preparing a warrant for the residence well before the

10

warrantless entry. Because preparation for the warrant began before the entry, it could not be said the entry prompted Hairston's decision to seek the warrant. Second, even removing the information obtained from the entry from the warrant, there was still probable cause to search Williams' residence. Officers observed Williams engaged in alleged drug transactions directly across the street from his residence. Further, when officers arrested Williams at the corner store, they found marijuana on him only three minutes after they observed him leaving his residence. Based on the temporal and locational proximity between Williams' residence and the alleged drug transactions, it is reasonable to believe that Williams was storing drug paraphernalia in his residence. There is a sufficient nexus linking Williams' alleged drug operation to his residence without the officers' pre-warrant observations. So, the warrant would still be valid, and the search would still be lawful. For those additional reasons, the evidence obtained in the residence will not be suppressed.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Defendant's *Motion to Suppress Evidence* **(Rec. Doc. 58)** is **DENIED**.

New Orleans, Louisiana, this 19th day of May, 2026.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE